IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

vs.   Case Nos.:   1:09cr2/MW/GRJ
           1:12cv83/MW/GRJ

MICAH C. PEACOCK

---

### REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and the Government's response. (Docs. 92, 96.)  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, the Court concludes that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

### FACTUAL and PROCEDURAL BACKGROUND

Defendant was charged in a two count indictment with receipt and distribution or attempted receipt and distribution of child pornography between on or about October 23, 2008 and on or about December 4, 2008, and possession of child pornography on or about December 4, 2008. (Doc. 1.)  The charges stemmed from an internet undercover operation aimed at identifying individuals using Gnutella peer to peer software to traffic in child pornography.  Through subpoena, law enforcement identified

a computer at a residence occupied by Defendant as participating in the distribution of child pornography.

Defendant was represented by assistant federal public defender William Rourke Clark. The parties stipulated that the images discovered on the computer seized from Defendant's residence were images of child pornography and that the images had a nexus to interstate and foreign commerce. (Doc. 43.) They also stipulated to the admission of evidence including the data and images and an expert's computer forensics report without the need for authentication. (Doc. 44.) Thus, the key issue for trial was who had downloaded the images onto Defendant's computer. Before trial the defense filed a notice of alibi defense. (Doc. 25.)

The Government presented the testimony of four witnesses at trial. Detective April Joyner of the Alachua County Sheriff's Office Internet Crimes Against Children Task Force testified that in October of 2008 she downloaded child pornography videos from an IP address belonging to a computer located at Defendant's residence. She obtained a search warrant from a state court judge and served the warrant, along with four other Detectives, on December 4, 2008. Defendant and his roommate Amanda Ciotti were present at the time. Joyner read both Peacock and Ciotti their Miranda rights. Investigators found a green laptop computer in the living room which belonged to Ciotti and which did not contain any child pornography.

Before Joyner had the opportunity to ask Defendant any questions, Defendant told her that he had downloaded something wrong the other day. When she asked what he meant by "wrong," he said that the girls were too young. Joyner asked what

Defendant had done with the file and he said he "got rid of it," although he said that he did not delete it because he doesn't know how to delete files since he is not very computer savvy. Defendant also told Joyner that he played poker online and that he flipped back and forth between the online poker games and the video files that he was downloading. At the time the search warrant was executed, Defendant's computer was actively running two searches, one for adult pornography and another that was linked into child pornography.

Joyner then interviewed Ciotti, who told her that approximately a month or two before, Ciotti and her boyfriend John Ellis[1] walked into the apartment and found Defendant on her laptop computer in the common area watching pornography. Ciotti did not know whether it was adult or child porn as Defendant minimized the screen when they entered, but she told him at that point not to use her computer. Ciotti told Joyner that she had found file names in the deleted area of her computer with titles indicative of child pornography, but that she was unable to open the files because they had been deleted. Shortly after that time Defendant brought his own computer into the apartment. There was a cable running from the laptop computer to a desktop computer in a room that was identified as Defendant's. When law enforcement searched that computer during the execution of the warrant, they discovered images and videos containing both adult and child pornography. As the officers were preparing to leave,

---

[1]Ellis' name was on both the lease and the Cox Communication account affiliated with the apartment. He was not present at the time of a search due to a "no contact" order which had been issued a couple days before as a result of a domestic disturbance with Ciotti.

Case Nos.: 1:09cr2/MW/GRJ; 1:12cv83/MW/GRJ

Defendant stated that he would never search for 18 year olds or "young" again.  Joyner did not arrest Defendant that day because of the ongoing federal investigation.

Charles Snipes of the Alachua County Sheriff's Office Computer Crimes Squad and Financial Crimes Squad also was part of the team who executed the warrant. Snipes, who acted as the computer forensic examiner, testified that he found no child pornography on the green laptop in the living room but found both child pornography videos and still images on the computer in Defendant's bedroom.  Snipes also testified that search terms particular to child pornography had been used thousand of times on the computer. He explained how investigators can determine the time of particular downloads, and noted that the downloads occurred between July and December of 2008.  Snipes stated that he had compared Defendant's work schedule with the times that the downloads had been created and he found that, with a single exception, there were no conflicts between the time Defendant was at work and when the information was downloaded.  Snipes explained that because there had been a series of downloads on that particular morning, Defendant could have started the process and then left for work before the files finished downloading.

John Ellis testified that Defendant and James Poe had sometimes stayed overnight at the apartment before Defendant moved in during the month of September. Defendant brought his computer to the apartment from his previous residence in another city after Ellis and Ciotti asked him not to use their computer, the green laptop, to download pornography.

Amanda Ciotti testified that a couple months before the execution of the search warrant, she had come upon Defendant watching pornography on her computer. She told him not to visit sites like that on her computer, and he agreed, but said that's what he liked to download. Ciotti said that she also discovered files with titles indicative of pornography on her computer, but that they had apparently been deleted. She recalled that Defendant brought his own computer to the house shortly thereafter.

Ciotti observed that when Officer Joyner read the search warrant to her and Defendant, Defendant put his head down, and raised it with a look of mild shock on his face. Ciotti said that based on Defendant's reaction, he did not seem surprised that law enforcement was there. She said that Defendant later told her that he enjoyed downloading pornography, and if there was any child pornography there it had been downloaded by accident, and that he viewed it and deleted it. Ciotti said that the first time Defendant said this, she believed him, but when he repeatedly found a reason to bring it up and appeared to be constantly defending himself, she began to doubt whether Defendant's downloading of child pornography was indeed accidental.

Defendant testified in his own behalf at trial. His testimony was centered around establishing an alibi for the time of the downloads. Defendant explained that he had an alibi for most, but not all of the times when downloads occurred, citing work, poker tournaments, and trips back to his home town. Defendant also denied that he had "confessed" in the manner testified to by April Joyner, variously claiming that he had only said "maybe" the girls were too young, that he did not realize that there was child pornography on his computer, and that his remarks were taken out of context in the

police report. Defendant also suggested that someone else had downloaded the pornography, but he was not willing to say who, and he conceded that he had never denied knowledge of or responsibility for the child pornography to the officers executing the warrant. The Government's final question to Defendant was:

> So your, I guess, basic explanation for all of this is that there is this mysterious pedophile or child pornographer watcher that's downloading this stuff to your computer and using your computer as the terminal to view all this stuff? That's how you are explaining this?

(Doc. 80 at 148). Defendant responded in the affirmative.

The defense also called Defendant's former employer, a poker dealer who worked at establishments he frequented, the owner of one of the establishments, Defendant's uncle and Defendant's mother to try to plant a doubt that Defendant was the person who downloaded the child pornography.

The jury deliberated for less than fifteen minutes before finding Defendant guilty on both counts. (Doc. 50; doc. 81 at 20.)

The Presentence Investigation Report ("PSR") was disclosed to the defense on November 4, 2009. (Docs. 57, 74.) Defendant's total offense level of 39 reflected a base offense level of 22, a four-level adjustment due to the involvement of material that portrayed sadistic or masochistic conduct, a five-level adjustment due to the quantity of images[2] and four two-level adjustments for the involvement of images involving a pre-pubescent minor, a peer-to-peer file sharing network, use of a computer and

---

[2] Law enforcement discovered videos and images totaling 2,165 images of children between one year of age and 12 years of age (PSR ¶¶ 9–19).

Defendant's obstruction of justice.[3] (Doc. 74, PSR ¶¶ 31–42.)  Defendant had a criminal history category of II.  The statutory minimum term of imprisonment on Count One was five years and the maximum term of imprisonment was 20 years.  The maximum term of imprisonment with respect to Count Two was ten years.  The applicable guidelines range of 292 to 365 months became 240 months as to Count One and 120 months as to Count Two due to the application of the statutory maximums (PSR ¶¶ 76, 77).

Defendant objected to the determination that he testified falsely at trial and to the two level adjustment for the use of peer-to-peer file sharing, and also argued that he was entitled to a reduction because he did not intend to traffic in or distribute the child pornography (PSR ¶¶ 106–111).

At sentencing the court overruled the enhancement for obstruction of justice based on the fact that the jury's finding of guilt contradicted his complete denial of responsibility,[4] and denied the objection relating to the use of peer-to-peer file sharing software. (Doc. 82 at 3.)  Defendant requested leniency in order to spend time with his father, who was afflicted with terminal prostate cancer, but had no further remarks. (*Id*. at 4.)  The court sentenced Defendant to a term of 150 months for Count One, which was the middle of the statutory range and below the guidelines range, and a concurrent term of 120 months on Count Two. (*Id*. at 6.)

---

[3]Defendant did not receive an adjustment for acceptance of responsibility as he denied any responsibility for the charges (PSR ¶¶ 29, 41).

[4]Defendant testified that he had closed any images he received of young girls while searching for adult pornography, and suggested that his roommates had downloaded the child pornography onto his computer while he was at work.

Defendant appealed, arguing that the district court erred by denying his motion to dismiss Count Two of the indictment and in calculating his sentence based on a finding that he had distributed the pornographic material. (Doc. 90.) The Eleventh Circuit affirmed, and Defendant's petition for a writ of certiorari was denied on May 9, 2011. (Doc. 91.) The instant motion was timely filed on April 17, 2012. (Doc. 92 at 13.)

In the present motion, Defendant raises three grounds for relief. He claims that counsel's failure to pursue an alibi defense was constitutionally ineffective, that he should have received a sentence reduction as a result of his military service, and that his due process rights were violated when a potentially exculpatory photograph was not introduced into evidence.[5] The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

### *General Standard of Review*

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of

---

[5]Although Grounds Two and Three are not specifically framed as claims of ineffective assistance of counsel, the court will construe them as such, which is consistent with the directive that pro se pleadings be liberally construed. *See* Haines v. Kerner, 405 U.S. 948 (1972).

constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v.

United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

   Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his

burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; see also Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); see also Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551,

1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. See Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an

evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.

### *Ground One*

Defendant claims that counsel was constitutionally ineffective because he failed to adequately present an alibi defense. Defendant states that his defense to the charges has always been that he was innocent. He claims that someone else had access to his computer and downloaded the images, and that there was evidence that he could not have been at his computer at the time of the downloads, including a "time stamped" photograph of him and gas receipts showing that he was not at home at the time the illegal images were downloading.  Defendant maintains that counsel should have moved for a continuance so Defendant could gather additional alibi evidence, although on cross-examination he admitted he had been given enough time to prepare his defense "as good as [he] could." (Doc. 80 at 146.)  Defendant also asserts that counsel should have hired an expert to verify the times reflected in the computer, again

allowing him to establish that someone else downloaded the child pornography to his computer in his absence.

Defendant testified and called several witnesses in an effort to establish that someone other than him was responsible for the illegal downloads. Defendant testified that he was physically at another location at the time when certain downloads were taking place. Regardless of Defendant's whereabouts, or any additional evidence he might have presented, the evidence against Defendant was overwhelming. The 2165 illegal images were downloaded over a period of several months in duration, both before and after Defendant moved into the apartment where he was ultimately arrested. Defendant did not offer a plausible alternative explanation for the presence of the illegal images on his computer or identify anyone who might have been responsible for all the illegal downloads.

Finally, Defendant ignores the fact that, regardless of where he may have been on other occasions, on the day that law enforcement executed the search warrant, he was present as his computer was actively running a search linked to child pornography. (*See* Doc. 87 at 43–44, 68.) In sum, Defendant has presented nothing but speculation and conjecture that he could have presented any evidence that would have exonerated him with respect to any – or even all – of the images of child pornography found on his computer, even if counsel had moved for a continuance. *See* Jones v. Smith, 772 F.2d 668, 673–74 (11th Cir. 1985) (counsel was not constitutionally ineffective for failing to move for a continuance absent proof that alibi witnesses existed).

Defendant also claims counsel should have hired a computer expert to rebut the testimony of the Government's expert.  Defendant focuses on some discrepancies regarding the working of the computer's internal time stamp.  Notably, however, he has not suggested what testimony a defense expert could have offered that would have changed the outcome in this case, regardless of the accuracy of the computer's internal "time stamp."  In addition to the overwhelming evidence summarized above, the testimony adduced at trial from the Government's forensic computer expert was that it takes an extended period of time to download multiple items and that the process can proceed without anyone being at the computer as it occurs.  Defendant has failed to show that counsel's performance was constitutionally deficient, and he is not entitled to relief.

### *Ground Two*

Defendant contends that he should have received a sentence reduction as a result of his prior military service, at the conclusion of which he received an honorable discharge.  He faults counsel for not bringing this issue to the court's attention at sentencing, and asserts that he is entitled to the reduction.

Defendant was sentenced on February 2, 2010.  Effective November 2, 2010, the Sentencing Commission amended the guidelines policy statement contained in § 5H1.11 to provide that military service "may be relevant in determining whether a departure is warranted if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines."  Prior to the effective date of this

amendment, the policy statement provided that military service was "not ordinarily relevant in determining whether a departure was warranted." Thus, counsel's failure to bring Defendant's military service to the attention of the court could not be considered constitutionally ineffective, as counsel is not ineffective for failing to preserve or argue a meritless claim. Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* Sneed v. Florida Dep't of Corrections, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless Batson claim not ineffective assistance of counsel); Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

The court also notes that even if the 2010 Amendment had been in effect at the time of Defendant's sentencing, the court would reach the same conclusion. The PSR reflects that Defendant enlisted in the United States Navy in January of 1997 and was discharged in April of 1997 due to his chronic bronchitis and color blindness. (Doc. 74, PSR ¶ 73.) This brief stint of service could not reasonably be construed as falling within the parameters of the amended policy statement. There is no basis for relief on this ground.

### *Ground Three*

In Defendant's final ground for relief, he contends that his due process rights were violated as a result of counsel's failure to introduce a potentially exculpatory photograph into evidence. Although inartfully framed as a due process claim, which

would be procedurally barred, this claim is cognizable as a claim of ineffective assistance of counsel. However, as explained in the court's discussion of Ground One, Defendant has not shown that counsel was constitutionally ineffective because the outcome of the proceeding would not have been changed by the introduction of the single allegedly exculpatory photograph in light of the remainder of the evidence against him.

## CONCLUSION

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has he shown that an evidentiary hearing is warranted. Therefore Defendant's motion should be denied in its entirety.

### Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The motion to vacate, set aside, or correct sentence (Doc. 92) should be **DENIED**.

2. A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 8th day of October, 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).